IAVTMAJP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          18 CR 328 (KPF)

5   AMIN MAJIDI,

6              Defendant.

7   ------------------------------x

8                                   New York, N.Y.
                                    October 31, 2018
9                                   4:00 p.m.

10

    Before:
11
                    HON. KATHERINE P. FAILLA,
12
                                        District Judge
13

14                       APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    JOSHUA NAFTALIS
17  MAX NICHOLAS
         Assistant United States Attorneys
18
    CLAYMAN & ROSENBERG
19       Attorneys for Defendant
    SETH ROSENBERG
20  BRIAN LINDER

21

22

23

24

25

IAVTMAJP

1          (Case called)

2          MR. NAFTALIS:  Good afternoon, your Honor, Josh

3   Naftalis and Max Nicholas for the government.  With us at

4   counsel table Matt Mahaffey from the FBI.

5          THE COURT:  Thank you all.  Good afternoon.

6          MR. ROSENBERG:  Good afternoon, your Honor, Seth

7   Rosenberg and Brian Linder for Mr. Majidi.

8          THE COURT:  Good afternoon, gentlemen, and Mr. Majidi,

9   good afternoon to you as well.

10          THE DEFENDANT:  Thank you, good afternoon.

11          THE COURT:  Mr. Rosenberg, do you have a copy of the

12   indictment in this case?

13          MR. ROSENBERG:  We do, your Honor.

14          THE COURT:  Thank you.  And do you also have a copy of

15   the letter to you and to Mr. Linder that is dated October 19 of

16   this year?

17          MR. ROSENBERG:  We do.

18          THE COURT:  And I believe you just placed both of

19   these in front of Mr. Majidi, am I correct?

20          MR. ROSENBERG:  Yes.

21          THE COURT:  Let me ask the parties something before I

22   begin, is there a position of the parties with respect to

23   whether this transcript should be sealed or not?

24          MR. NAFTALIS:  We don't think it needs to be, your

25   Honor.

IAVTMAJP

1          THE COURT:  That was my question, thank you very much

2     for letting me know.

3          Sir, Mr. Rosenberg, to ask the extent I am directing

4     questions to Mr. one of Majidi's counsel, should I be directing

5     them to you in the first instance?

6          MR. ROSENBERG:  Probably Mr. Linder would be your

7     better choice.

8          THE COURT:  I'm not going to opine on that, I want to

9     make sure I'm asking the right person.

10          Mr. Majidi, your attorney has placed in front of you a

11     copy of the indictment in this case, and he's placed in front

12     of you a copy of a letter from the U.S. Attorney's Office.  You

13     may recall, sir, that at a prior proceeding before me you were

14     arraigned on this indictment.  I asked you a series of

15     questions and you gave me a series of answers.  Do you recall

16     that, sir?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  And at that time my recollection is that

19     you entered a plea of not guilty to the charges contained in

20     the indictment.  Am I also correct?

21          THE DEFENDANT:  Yes.

22          THE COURT:  It is my understanding, sir, that today

23     you wish to change your plea and you wish to enter a plea of

24     guilty to Counts One, Two, Three and Four of the indictment in

25     this case, am I correct?

IAVTMAJP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And let me talk to you about this, please,

3     sir.  Before I can accept a guilty plea from you, I need to ask

4     you a series of questions, so let me please explain to you the

5     purposes that those questions serve.

6          The first thing that I need to determine is that you

7     are competent to enter a plea of guilty, you can see and hear

8     and understand what is going on in the courtroom, and you're

9     not under any influence that might impair you in your ability

10    to perceive what is going on in the courtroom.

11         If I find you are competent, I will talk to you about

12    the rights that you have and that you would be waiving by

13    entering a plea of guilty.  I will talk to you about the

14    charges to which you propose to plead guilty and the penalties

15    that are associated with those charges.  And finally, I will

16    ask you what it is you did that makes you believe that you are

17    guilty of these offenses.

18         As you might imagine, Mr. Majidi, there are a number

19    of questions that I need to ask you.  They're all important.

20    If at any time you cannot understand one of my questions, or if

21    at any time for any reason you wish to take a break in these

22    proceedings, let me know.  If I do not hear from you, I will

23    understand that you are hearing and understanding each of the

24    questions that I'm asking.

25         Is that our understanding, sir?

IAVTMAJP

1          THE DEFENDANT:  Thank you, your Honor, yes.

2          THE COURT:  Ms. Noriega, could you please swear in

3    Mr. Majidi.

4          (Defendant sworn)

5          DEPUTY CLERK:  Please state your name for the record.

6          THE DEFENDANT:  Amni Majidi.

7          DEPUTY CLERK:  Thank you, you may be seated.

8          THE COURT:  Mr. Majidi, the significance of my placing

9    you under oath is that if you were to answer any of the

10   questions that I'm about to ask you falsely, you could be

11   prosecuted for a separate offense, and that offense is known as

12   perjury.  Do you understand that, sir?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  Mr. Majidi, how old are you?

15         THE DEFENDANT:  52.

16         THE COURT:  How far did you go in school, sir?

17         THE DEFENDANT:  I have my bachelor's degree from

18   university and some graduate studies.

19         THE COURT:  Have you ever been treated or hospitalized

20   for any form of mental illness?

21         THE DEFENDANT:  No.

22         THE COURT:  Are you now or have you recently been

23   under the care of a doctor or a psychiatrist?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And I'm going to ask you to bring the

IAVTMAJP

1    microphone that's to your left a little closer to you.

2         Are you under the care of a doctor at this time or a

3    psychiatrist?

4         THE DEFENDANT:  Psychiatrist.

5         THE COURT:  ████████████████████████████████████

6    ████████████████████████████

7         THE DEFENDANT:  ██████████████████████████████████

8    █████████

9         THE COURT:  ████████████████████████████████████

10   █████████████████████████████████████████

11        THE DEFENDANT:  ████

12        THE COURT:  ████████████████████████████████████

13   ██████

14        THE DEFENDANT:  ████

15        THE COURT:  ████████████████████████████████

16   ██████████

17        THE DEFENDANT:  █████████████████████████████████

18   ████████████████████████████

19        THE COURT:  ██████████████████████████████████████

20   █████████████████

21        THE DEFENDANT:  █████████████████████████████

22        THE COURT:  ██████████

23        THE DEFENDANT:  ██████████████████████████████

24   █████████████████████████████████████████████████████

25   ████████████████████████████

IAVTMAJP

1        THE COURT:  ███████████████████████████

2   ████████████████████████████████████████

3        THE DEFENDANT:  ████

4        THE COURT:  Does that have any affect of dulling your

5   mind or impairing in any way your ability to see, hear, or

6   understand what is going on in the courtroom today?

7        THE DEFENDANT:  No, ma'am.

8        THE COURT:  ████████████████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████

11       THE DEFENDANT:  ████

12       THE COURT:  And other than your relationship with this

13  psychiatrist, is there any other medical or mental health

14  treatment that you are receiving at this time?

15       THE DEFENDANT:  No.

16       THE COURT:  Have you ever been treated or hospitalized

17  for any form of addiction, including drug or alcohol addiction?

18       THE DEFENDANT:  No, your Honor.

19       THE COURT:  ████████████████████████

20  ████████████████████████████████████████

21  ████████████████████████████████

22       THE DEFENDANT:  ██████████████████████████

23  ████████████████

24       THE COURT:  ██████████████████████████

25  ████████████████████████████

IAVTMAJP

1            THE DEFENDANT:  ████████████

2            THE COURT:  In any way are you impaired as a

3    consequence of any medication you may be taking for any medical

4    or mental health condition?

5            THE DEFENDANT:  No, your Honor.

6            THE COURT:  Were there any other drugs, medicine or

7    pills that you took in the last two days?

8            THE DEFENDANT:  No.

9            THE COURT:  In the last two days have you consumed any

10   alcoholic beverages?

11           THE DEFENDANT:  Yes, I shared a beer with my wife last

12   night.

13           THE COURT:  May I imagine, sir, that you're not today

14   feeling the effect of the beer you shared with your wife last

15   night?

16           THE DEFENDANT:  That is correct.

17           THE COURT:  And so there's no impairment occasioned by

18   that?

19           THE DEFENDANT:  No.

20           THE COURT:  Is your mind clear today, sir?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you understand what is happening in the

23   courtroom today?

24           THE DEFENDANT:  Yes, I do.

25           THE COURT:  Mr. Linder, let me turn to you, please.

IAVTMAJP

1   Have you and your colleague had enough time to discuss this

2   matter with your client?

3            MR. LINDER:  We have, your Honor.

4            THE COURT:  Do you believe that he is capable of

5   understanding the rights that he has and that he would be

6   waiving by entering a plea of guilty?

7            MR. LINDER:  We do.

8            THE COURT:  Do you believe as well that he is capable

9   of understanding the nature of these proceedings this

10   afternoon?

11            MR. LINDER:  Yes.

12            THE COURT:  Do you have any doubt as to your client's

13   competence to plead guilty if that is what he wishes to do?

14            MR. LINDER:  None whatsoever.

15            THE COURT:  Mr. Naftalis, do you have any doubt as to

16   Mr. Majidi's competence to plead guilty if that is what he

17   wishes to do?

18            MR. NAFTALIS:  No, your Honor.

19            THE COURT:  Should I be directing questions to you or

20   to Mr. Nicholas?

21            MR. NAFTALIS:  To me is fine, your Honor.

22            THE COURT:  Thank you.

23            Mr. Majidi, based on the discussions that I have had

24   with you for the past few minutes, and that includes both your

25   answers to my questions and my observations of your demeanor

IAVTMAJP

1    here in court, and based as well on the discussions that I just

2    had with your attorneys and with the attorneys for the

3    government, I find that you are fully competent to enter a

4    knowing and informed plea of guilty if that is what you wish to

5    to.

6            I have had your attorney place before you the

7    indictment in this case.  And I know I asked you questions

8    about it previously, but some of them are sufficiently

9    important that I'm going to ask them a second time.  Have you

10   read this indictment, sir?

11           THE DEFENDANT:  Yes, I have.

12           THE COURT:  Have you had whatever time you needed to

13   discuss with your attorneys the charges to which you propose to

14   plead guilty and any defenses that you might have to those

15   charges?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  I don't want the specifics of any

18   communication you may have had with your attorneys because

19   those communications are privileged, but I would like to know

20   generally, have your attorneys explained to you the

21   consequences of entering a plea of guilty in this case?

22           THE DEFENDANT:  Yes, they have.

23           THE COURT:  Are you satisfied with their

24   representation of you in this matter?

25           THE DEFENDANT:  Yes, very much so.

IAVTMAJP

1          THE COURT:  I'm going to now explain to you certain

2     rights that you have and would be waiving by entering a plea of

3     guilty.  I know you have been following me very carefully and I

4     ask you to continue doing that, and I remind you of your

5     earlier agreement if there's something that you don't

6     understand or some other reason why you would like to take a

7     break, you will let me know.

8          Sir, under the Constitution and laws of the United

9     States, you have the right to continue with your pleas of not

10    guilty to the charges contained in the indictment.  Do you

11    understand that?

12          THE DEFENDANT:  Yes, I do.

13          THE COURT:  If you continued with your pleas of not

14    guilty, you would be entitled to a speedy and public trial by a

15    jury on the charges in this indictment.  Do you understand

16    that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  At a trial you would be presumed to be

19    innocent and the government would be required to prove you

20    guilty by competent evidence beyond a reasonable doubt before

21    you could be found guilty.  Do you understand that, sir?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  A jury of twelve people would have to

24    agree unanimously that you were guilty.  You would not have to

25    prove that you were innocent of these charges if you were to

IAVTMAJP

1    proceed to trial.  Do you understand that, sir?

2            THE DEFENDANT:  Yes, I do.

3            THE COURT:  At a trial and at every stage of your

4    prosecution you are entitled to the assistance of an attorney.

5    If and to the extent you cannot afford an attorney, one would

6    be appointed for you at public expense free of cost to you in

7    order to represent you.  Do you understand that, sir?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  If there were a trial in this case, the

10   witnesses for the government would have to come into court and

11   testify in your presence.  Your attorneys could cross-examine

12   the witnesses for the government, they could object to evidence

13   offered by the government, they could offer evidence on your

14   own behalf if you wanted them to do so.  You would also have

15   the right to have subpoenas or other documents or process used

16   in order to compel witnesses to testify in your defense.  Do

17   you understand that, sir?

18           THE DEFENDANT:  I do, yes.

19           THE COURT:  If there were a trial in this case, you

20   would have the right to testify if you wanted to do so, and you

21   would have the right not to testify if you wanted not to do so.

22   If you decided not to testify, no one, including the jury,

23   could draw any inference or suggestion of guilt from your

24   decision not to testify.  Do you understand that, sir?

25           THE DEFENDANT:  I do, yes.

IAVTMAJP

1          THE COURT:  Another consequence of entering a guilty

2     plea in this particular manner is that you give up your right

3     to seek supression or exclusion of the government's evidence

4     against you.  Are you aware of that, sir?

5          THE DEFENDANT:  Yes, I am.

6          THE COURT:  Without giving me the specifics of your

7     communications, have you and your attorneys had a sufficient

8     opportunity to discuss whether there is a basis for you to seek

9     supression or exclusion of part or all of the government's

10    evidence against you?

11         THE DEFENDANT:  Yes, we have.

12         THE COURT:  Do you also understand that if you were

13    convicted after a trial, you would have the right to appeal

14    from the jury's verdict?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And even now as you are preparing to enter

17    this guilty plea, you have the right to change your mind and to

18    continue with your previously entered plea of not guilty to

19    these charges.  Are you aware of that, sir?

20         THE DEFENDANT:  Yes, I am, your Honor.

21         THE COURT:  Mr. Majidi, if you plead guilty and if I

22    accept your guilty plea, you will give up your right to trial

23    and the other rights I have been discussing with you, other

24    than your right to an attorney.  You have the right to an

25    attorney whether you plead guilty or go to trial.  But if you

IAVTMAJP

plead guilty, and if I accept your guilty plea, there will be no trial I will enter a judgment of guilty on Counts One through Four of the indictment.

I will sentence you at a later date based on information that I receive from you today, information that I receive from the United States Probation Office in a document known as a presentence investigation report, and information that I receive from you and your attorneys and from the attorneys for the government in connection with sentencing.

If you plead guilty, and if I accept your guilty plea, there will be no appeal on the issue of whether you committed the offenses charged in the indictment, and there would be no appeal on the issue of whether the government could use the evidence that it has against you.

Now I know I said a number of things there, sir, but were you able to follow me as I said them?

THE DEFENDANT:  I followed them completely, yes.

THE COURT:  Did you understand each of the things I was saying to you?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that if you plead guilty there is a degree to which you have to give up your right not to incriminate yourself?  And what I mean by that is I will ask you questions later in this proceeding to confirm for myself that you are pleading guilty because you are in fact

IAVTMAJP

1   guilty and not for some other reason, and you will have to

2   admit and acknowledge your guilt of the offenses to which you

3   plead guilty.  Are you aware of that, sir?

4           THE DEFENDANT:  Yes, I am.

5           THE COURT:  Mr. Majidi, are you aware of each of the

6   rights I have been discussing with you?

7           THE DEFENDANT:  I am, yes.

8           THE COURT:  Would you like me or your attorneys to

9   provide any additional or clarifying information about any of

10  these rights?

11          THE DEFENDANT:  No, your Honor.

12          THE COURT:  And are you willing to give up your right

13  to trial and the other rights I have been discussing with you

14  and enter a plea of guilty in this case?

15          THE DEFENDANT:  Yes.

16          THE COURT:  It is my understanding that you are

17  proposing to plead guilty to four charges in this case, am I

18  correct, sir?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  It is my understanding that you are

21  proposing to plead guilty to conspiracy to commit securities

22  fraud in violation of Title 18, United States Code, Section

23  371; conspiracy to commit wire fraud in violation of Title 18,

24  United States Code, Section 1349; securities fraud in violation

25  of Title 15, United States Code, Sections 78jb and 78ff, and

IAVTMAJP

1   Title 17, Code of Federal Regulations, Section 240.10(b)(5),

2   and Title 18, United States Code, Section 2; and in Count Four,

3   wire fraud in violation of Title 18, United States Code,

4   Sections 1343 and 2.

5          So there are four counts to which you propose to plead

6   guilty.  Is that your understanding as well, sir?

7          THE DEFENDANT:  Yes, it is, your Honor.

8          THE COURT:  Are the particular offenses that I just

9   recited to you the offenses to which you propose to plead

10  guilty?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Mr. Majidi, I'm going to ask for your

13  attention, and I will give mine as well, as we ask the

14  government to recite for both of us the elements of each of

15  these offenses.

16         Mr. Naftalis, thank you.

17         MR. NAFTALIS:  Yes, your Honor.  Starting with Count

18  One, conspiracy to commit securities fraud, if the case were to

19  proceed to trial the government would prove the following three

20  elements beyond a reasonable doubt:  First, the existence of an

21  agreement or understanding to commit the unlawful object of the

22  charged conspiracy, here securities fraud; second, that the

23  defendant willfully and knowingly became a member of that

24  conspiracy and joined in it; and third, that at least one of

25  the co-conspirators committed an overt act in furtherance of

IAVTMAJP

1     the conspiracy.

2            The object of the conspiracy, as I mentioned, is

3     securities fraud, and that is charged as a substantive count in

4     Count Three.  I will read the elements of that offense now.

5     First, in connection with a purchase or sale of security, the

6     defendant did any one or more of the following:

7            One, employ a device, scheme or artifice to defraud,

8     or two, made an untrue statement of a material fact or omitted

9     to state a material fact which made what was said under the

10    circumstances misleading; or three, engage in an act, practice,

11    or course of business that operated or would operate as a fraud

12    or deceit upon a purchaser or seller.

13           Second, the defendant acted willfully, knowingly and

14    with the intent to defraud.

15           Third, the defendant knowingly used, or caused to be

16    used, A, any means or instruments of transportation or

17    communication in interstate commerce, or B, the use of the

18    mails in furtherance of the fraudulent conduct.

19           Now turning to Count Two, which is conspiracy to

20    commit wire fraud, there are two elements of that offense.  I

21    basically already said them, but I will repeat them:  First,

22    the existence of an agreement or understanding to commit the

23    unlawful object of the conspiracy, here wire fraud; and second,

24    the defendant willfully and knowingly became a member of that

25    conspiracy and joined in it; and then, as I mentioned, the

IAVTMAJP

1    object is wire fraud.

2              The elements of wire fraud, which are also charged as

3    a substantive offense in Count Four, are the following:  First,

4    that there was either a scheme or artifice to defraud, or to

5    obtain money or property by materially false and fraudulent

6    pretenses, representations and/or promises; second, that the

7    defendant knowingly and willfully participated in the scheme or

8    artifice to defraud with knowledge of its fraudulent nature and

9    with specific intent to defraud, or that the defendant

10   knowingly and intentionally aided and abetted others in the

11   scheme; third, that in the execution of that scheme, the

12   defendant used or caused the use of private or interstate

13   carrier or interstate wires.  We would prove venue by a

14   preponderance.

15             THE COURT:  Thank you very much.

16             Mr. Majidi, I understand there was a lot to hear, but

17   I saw you were following along, and may I confirm that you were

18   following along as the prosecutor outlined the elements of the

19   offense?

20             THE DEFENDANT:  Yes, I was.

21             THE COURT:  Thank you.  Do you understand, sir, that

22   if you were to proceed to trial, that is what the government

23   would have to prove at trial?

24             THE DEFENDANT:  Yes, I do, your Honor.

25             THE COURT:  What I would like to do now, sir, is talk

IAVTMAJP

1    to you about the penalties that are associated with these

2    offenses, and I'm going to focus on the maximum possible

3    penalties that are associated with each.  I'm are deliberately

4    using the term "maximum," sir, because I want you to understand

5    the most that could possibly be imposed.  I'm not saying this

6    is necessarily what you're going to receive.

7              I do want to make sure that you understand that by

8    pleading guilty you would be subjecting yourself or exposing

9    yourself to the possibility of receiving any combination of

10   punishments up to the statutory maximum terms that I'm about to

11   describe.  Do you understand that, sir?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  I'm going to focus first on restrictions

14   on your liberty.  The maximum term of imprisonment for these

15   offenses vary, so let me go through them with you.  The maximum

16   term of imprisonment for Count One is five years, the maximum

17   term of imprisonment for Count Two is 20 years, the maximum

18   term of imprisonment for Count Three is 20 years, and the

19   maximum term of imprisonment for Count Four is 20 years.

20             Do you understand that, sir?

21             THE DEFENDANT:  I do, your Honor.

22             THE COURT:  And do you understand as well that any

23   term of imprisonment that I might impose could be followed by a

24   term of supervised release?  And I will talk to you about those

25   terms in a moment, but first of all, are you familiar with the

IAVTMAJP

1   concept of supervised release?

2           THE DEFENDANT:  I am.

3           THE COURT:  And so let me review with you, please, the

4   maximum terms of supervised release for each of these offenses.

5   The maximum term of supervised release for Count One is three

6   years, for Count Two is three years, for Count Three is three

7   years, and for Count Four is three years.  These would run

8   concurrently, sir, so the maximum term effectively would be

9   three years supervised release.

10          Let me talk to you, please, for a moment about

11  supervised release, because I want to make sure that you and I

12  have the same understanding when I use the term.

13          When I use the term "supervised release," what I am

14  referring to is a period of time where you would be subject to

15  supervision by the United States Probation Office.  There would

16  be terms and conditions of supervised release that you would

17  have to follow, and if you were unable to follow those terms

18  and conditions of supervised release the possibility exists

19  that your term of supervised release could be revoked and you

20  could be sent to prison to serve time without a jury trial.

21          If your term of supervised release were revoked, you

22  would not get any credit for any time that you had served as a

23  term of imprisonment.  You would also not get any credit for

24  any time that you had spent on supervised release in compliance

25  with the terms of supervised release.

1          Do you understand each of those things, sir?

2          THE DEFENDANT:  I do, your Honor.

3          THE COURT:  Do you also understand that there is no

4     parole in the federal system.  If you are sentenced to a term

5     of imprisonment you would not be released early on parole.

6     There is an opportunity to earn credit for good behavior, but

7     even then you would have to serve at least approximately

8     85 percent of any term of imprisonment imposed.  Do you

9     understand that, sir?

10          THE DEFENDANT:  I do.

11          THE COURT:  At the beginning of this discussion in

12     this area we talked about the maximum terms of imprisonment.

13     Do you understand that the aggregate maximum term of

14     imprisonment in this case is 65 years imprisonment?

15          THE DEFENDANT:  I do, your Honor.

16          THE COURT:  In addition to these restrictions on your

17     liberty, the maximum possible punishment also includes certain

18     financial penalties.  The maximum allowable fine in this case

19     varies with each count, but let me review with you each of

20     them.  It tends to be the greatest of one of three things,

21     either a number or twice the gross pecuniary gain derived from

22     the offense or twice the gross pecuniary loss to persons other

23     than yourself.  For Count One, that number is $250,000, for

24     Count Two, it is $250,000, for Count Three it is $5 million,

25     and for Count Four it is $250,000.

IAVTMAJP

1        In addition, I could order restitution to any person

2   or entity who has been injured as a result of your conduct.  I

3   can order you to forfeit any proceeds that you may have derived

4   from the offense or any property that you may have used to

5   commit or to facilitate the commission of the offense, and I

6   must order a mandatory special assessment of $100 per count of

7   conviction, so in this case, $400.

8        Do you understand that those are the maximum possible

9   penalties to which you are subjected in this case?

10        THE DEFENDANT:  Yes, I do, your Honor.

11        THE COURT:  Mr. Majidi, I have a series of questions

12   that I must ask you, and it's my expectation that not all of

13   them will be relevant to you.  I will explain to you why I'm

14   asking them as I do, but I want to preface it by saying they're

15   not all relevant.

16        I will begin by asking:  Are you a United States

17   citizen, sir?

18        THE DEFENDANT:  Yes, I am.

19        THE COURT:  I ask that because some people who appear

20   before me are not.  A guilty plea can have adverse immigration

21   consequences.  But since you are a citizen, they would not have

22   those consequences.  I will ask you something different.

23        Do you understand that as a result of your guilty plea

24   you could lose certain valuable civil rights, to the extent you

25   have them today or could obtain them in the future?  These

IAVTMAJP

1    would include the right to vote, the right to serve on a jury,

2    the right to hold public office, and the right to possess a

3    firearm.  Are you aware of that, sir?

4              THE DEFENDANT:  Yes, I am.

5              THE COURT:  Mr. Majidi, are you serving any other

6    sentence at this time?

7              THE DEFENDANT:  No.

8              THE COURT:  To the best of your knowledge, sir, are

9    you being prosecuted in any other jurisdiction at this time?

10             THE DEFENDANT:  I am not.

11             THE COURT:  Is there a concurrent SEC matter in this

12   case, a civil action?

13             MR. NAFTALIS:  Yes, your Honor, it's before Judge

14   Nathan and it's stayed right now.

15             THE COURT:  Thank you very much.

16             Mr. Majidi, do you understand that the case before

17   Judge Nathan is, of course, different; related, but different.

18   Do you understand that resolving the case before me would not

19   resolve other cases that you might have before other judges?

20   Are you aware of that, sir?

21             THE DEFENDANT:  Yes, I am, your Honor.

22             THE COURT:  I'm going to ask you a different set of

23   questions now that I know this is the one criminal case that

24   you have.  Without giving me the specifics of your

25   communications, have you discussed with your attorneys the

IAVTMAJP

1    process of sentencing?

2              THE DEFENDANT:  I have.

3              THE COURT:  And do you understand that in connection

4    with sentencing I must review certain factors that are set

5    forth in a statute, and they're commonly referred to as 3553(a)

6    factors because that's the statutory provision where they're

7    contained.  So do you understand that there are sentencing

8    factors that I must consider in connection with sentencing you?

9              THE DEFENDANT:  I do.

10             THE COURT:  Do you understand that one of the factors

11   that I must consider is something called the United States

12   Sentencing Guidelines?

13             THE DEFENDANT:  I know about that, yes.

14             THE COURT:  Can I understand that you may have spoken

15   with your attorneys about the sentencing guidelines?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And if I use the term "guidelines" or

18   "sentencing guidelines," that's what I'm referring to.  Will

19   you understand that, sir?

20             THE DEFENDANT:  Yes.

21             THE COURT:  I want to make sure that you understand

22   that if anyone has attempted to predict for you what your

23   ultimate sentence will be, their prediction could be incorrect.

24   I will be the judge who will be sentencing you, and I don't

25   have the information that I need today to sentence you

25

IAVTMAJP

1    properly.  I need to hear from you later on in this proceeding,

2    I need to hear from the probation office and the presentence

3    investigation report, and I need to hear from you and your

4    attorneys and from the attorneys for the government in

5    connection with sentencing.  So do you understand, sir, that

6    today no one can predict with any confidence what your ultimate

7    sentence will be?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Do you also understand that if your

10   ultimate sentence is different from what anyone may have

11   suggested to you that it might be, if it is different from what

12   you yourself expected or hoped for, if it is different from any

13   guidelines range that may have been discussed in your dealings

14   with the government, you would still be bound by your guilty

15   plea, you would not be able to withdraw your plea of guilty

16   based merely on dissatisfaction with your sentence.  Do you

17   understand that, sir?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  It is my understanding that there is a

20   written plea agreement between you and the government with

21   respect to your plea today.  Am I correct, sir?

22             THE DEFENDANT:  Yes.

23             THE COURT:  I have been given a document, it is a

24   letter dated October 19 of this year, from the United States

25   Attorney's Office to your attorneys, Mr. Rosenberg and

IAVTMAJP

1    Mr. Linder.

2              Do you have a copy of that letter from front of you,

3    sir?

4              THE DEFENDANT:  I do, yes.

5              THE COURT:  The copy that I have I will mark as Court

6    Exhibit 1 and give to the government at the end of this

7    proceeding to keep safe.

8              Could I ask you to turn to last page of your document,

9    for me, that is page 5.

10             THE DEFENDANT:  Yes.

11             THE COURT:  Is that also the last page for you, as

12   well?

13             THE DEFENDANT:  Page 5, yes.

14             THE COURT:  Are there four signatures on your page 5?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Is one of the signatures yours?

17             THE DEFENDANT:  Absolutely, yes.

18             THE COURT:  Did you sign this document today, sir?

19             THE DEFENDANT:  I did.

20             THE COURT:  Did you sign it in the presence of your

21   attorneys?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Before you signed this document, did you

24   read it?

25             THE DEFENDANT:  Yes.

IAVTMAJP

1          THE COURT:  Did you have whatever time you needed to

2    have with your attorneys to review the document?

3          THE DEFENDANT:  I did.

4          THE COURT:  At the time you signed it, sir, did you

5    understand this document?

6          THE DEFENDANT:  I did.

7          THE COURT:  I will not review every piece of it with

8    you but there are a few points I would like to review.

9          I'm going to ask you please to turn to page 2.  Let me

10   know when you've gotten to page 2.

11         THE DEFENDANT:  I'm there.

12         THE COURT:  Thank you very much.  Sir, I'm directing

13   your attention to the third full paragraph of that page, which

14   begins, "It is further understood."  Do you see that, sir?

15         THE DEFENDANT:  Yes, I do.

16         THE COURT:  It is my understanding that in this

17   paragraph you are agreeing to make restitution in an amount

18   that I might determine later pursuant to various provisions of

19   the United States Code.  Are you agreeing to make restitution

20   if and to the extent that I determine that there are

21   individuals or entities who have been injured as a result of

22   your conduct?

23         THE DEFENDANT:  Yes, I understand that.

24         THE COURT:  And you are making that agreement, sir?

25         THE DEFENDANT:  Yes.

IAVTMAJP

1              THE COURT:  In the next paragraph, sir, it is my

2       understanding that you are admitting to the forfeiture

3       allegation that is associated with Counts One through Four of

4       the indictment, and you are agreeing to forfeit any proceeds

5       you may have derived from the offense or any property that you

6       may have used to commit or facilitate the commission of the

7       offense, am I correct?

8              THE DEFENDANT:  Yes, I agree.

9              THE COURT:  So I could ask this technical question:

10      Are you admitting to the forfeiture allegation?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Thank you.  I'm looking at the paragraph

13      that follows that, sir, the one that begins, "It is

14      understood," and I understand this paragraph to be a list of

15      undertakings that you are going to do with the government in

16      this case.  Is that your understanding as well?

17             THE DEFENDANT:  Yes, it is, your Honor.

18             THE COURT:  And I can read each one of those

19      separately, but you have read this paragraph, yes, sir?

20             THE DEFENDANT:  I read it carefully, yes.

21             THE COURT:  And you are agreeing to do all of the

22      things that you commit to in this paragraph?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Could I ask you, please, to turn to page 3

25      and tell me when you have gotten to page 3.

IAVTMAJP

1          THE DEFENDANT:  I'm there.

2          THE COURT:  I'm looking at the very bottom of page 3,

3   the last paragraph, and actually I'm looking at the paragraph

4   before that as well.  These paragraphs address things that can

5   happen if it is determined that you have violated a term of

6   this agreement or if you have committed additional crimes or

7   given false testimony or committed other violations, that there

8   are certain consequences to that.  Have you read those

9   paragraphs, sir?

10          THE DEFENDANT:  I have.

11          THE COURT:  Do you understand that if you commit the

12   acts described in those paragraphs, the possibility exists that

13   the government could take certain consequences?

14          THE DEFENDANT:  I understand, yes.

15          THE COURT:  Mr. Majidi, we have been talking about

16   this agreement for a few moments now.  Does this written plea

17   agreement I marked as Court Exhibit 1 constitute your complete

18   and total understanding of your agreement with the government?

19          THE DEFENDANT:  It does.

20          THE COURT:  To the best of your knowledge, sir, has

21   anything been left out?

22          THE DEFENDANT:  No.

23          THE COURT:  Other than what is written in this

24   agreement, has anyone made you any promise or offered you any

25   type of inducement in order to get you to sign this agreement

IAVTMAJP

1    or to plead guilty here today?

2                THE DEFENDANT:  No.

3                THE COURT:  Has anyone threatened you or forced you to

4    to plead guilty here today or to sign this agreement?

5                THE DEFENDANT:  No, your Honor.

6                THE COURT:  Has anyone made any promise to you as to

7    what your ultimate sentence will be?

8                THE DEFENDANT:  No.

9                THE COURT:  Earlier you heard me refer to guidelines

10   and the sentencing guidelines.  Do you recall that part of our

11   discussion, sir?

12               THE DEFENDANT:  Of course, yes.

13               THE COURT:  Do you understand that even if the parties

14   have discussed how the guidelines might apply in your case, I

15   have an independent obligation to calculate the guidelines?

16   Are you aware of that?

17               THE DEFENDANT:  Yes, I am.

18               THE COURT:  And so if my correctly calculated

19   guidelines range were to come out to something different from

20   what you may have discussed with your attorneys or with the

21   government or anyone else, do you understand that that would

22   not be a basis for you to withdraw your plea?

23               THE DEFENDANT:  I do understand, yes.

24               THE COURT:  Mr. Majidi, could you please tell me in

25   your own words what it is that did you that makes you believe

IAVTMAJP

| | |
|---|---|
| 1 | that you are guilty of Counts One through Four of the |
| 2 | indictment.  Why don't I begin by asking:  Do you have written |
| 3 | notes with you, sir? |
| 4 | THE DEFENDANT:  I do. |
| 5 | THE COURT:  That's very common.  And are they to aid |
| 6 | you in speaking with me today? |
| 7 | THE DEFENDANT:  Yes. |
| 8 | THE COURT:  The only thing that matters to me is that |
| 9 | the thoughts expressed in those notes are yours.  Are they, |
| 10 | sir? |
| 11 | THE DEFENDANT:  They are mine. |
| 12 | THE COURT:  I would be happy to hear them.  Thank you. |
| 13 | And I will ask you, please, to speak slower and louder than you |
| 14 | think you need to. |
| 15 | THE DEFENDANT:  Between 2014 and 2016 I was employed |
| 16 | at Premium Point Investment, or PPI, an investment advisor |
| 17 | located in Manhattan. |
| 18 | During that time I was a portfolio manager for the |
| 19 | mortgage credit fund, a hedge fund that invested in, among |
| 20 | other things, residential mortgage backed securities.  The |
| 21 | month's end net asset value of the funds that PPI managed was |
| 22 | an important measure of the funds' performance and was |
| 23 | disseminated to investors and potential investors through the |
| 24 | mail and interstate wire communications.  The funds' net asset |
| 25 | value and their performance also determined PPI's management |

IAVTMAJP

1    fees and performance fees.

2                Between 2014 and 2016, I participated in a scheme

3    with, among others, Neil Ahuja, CEO of PPI, and Jeremy Shor, a

4    trader at PPI, to fraudulently inflate the net asset value of

5    the funds that PPI managed.  Instead of marking securities in

6    PPI's portfolio at their fair market value, I worked with

7    Ahuja, Shor, and others, to mismark their value.  I knew that

8    the resulting monthly net asset value was inflated for the

9    purpose of deceiving investors as to the fund's performance.

10               I knew that what I was doing was wrong.

11               THE COURT:  Is there anything else that you would like

12   me to know, sir?

13               THE DEFENDANT:  No.

14               THE COURT:  Please be seated.  Thank you.

15               You indicated to me just a moment ago that when you

16   were engaged in this conduct you understood that it was wrong.

17   Did you also understand that it was illegal?

18               THE DEFENDANT:  I did not, no.

19               THE COURT:  You did not at that time.  At some

20   point --

21               MR. NAFTALIS:  Could we --

22               THE COURT:  Yes.

23               (Pause)

24               THE DEFENDANT:  Let me rephrase.  At the time I was

25   uncomfortable with my conduct and I knew that by inflating the

IAVTMAJP

1    net asset values for the investors I was committing something

2    wrong and potentially illegal.  And illegal, yes.

3           THE COURT:  Okay.  So either at the beginning of your

4    involvement in this matter or over time you came to realize the

5    conduct in which you were engaged was illegal, sir?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Thank you.

8           Mr. Linder, do you know of any valid defense that

9    would prevail at trial or any other reason why your client

10   should not be permitted to plead guilty to Counts One through

11   Four?

12          MR. LINDER:  I do not, your Honor.

13          THE COURT:  Mr. Naftalis, are there additional

14   questions that you would like me to ask Mr. Majidi, or are

15   there proffers you would like to make regarding any interstate

16   elements of the offenses.  He did make mention of both mails

17   and wires, so I assume that the wire element has been

18   satisfied, but I will hear from you if you think otherwise.

19          MR. NAFTALIS:  We think the allocution is sufficient.

20   We will represent that there were interstate wires, including

21   emails, text messages, and there were also mailings.  So we

22   think the interstate elements of both the wire fraud and

23   securities fraud are satisfied.

24          THE COURT:  I also heard Mr. Majidi to say that he

25   understood the purpose of changing or modifying the net asset

1    value figures was in part to deceive investors, so I understood

2    that to be an adequate explication of the intent to defraud.

3    Do you agree?

4              MR. NAFTALIS:  We agree.

5              THE COURT:  Would you tell me, sir, at a high level

6    the types of evidence that would be introduced if this case

7    were to go to trial?

8              MR. NAFTALIS:  Yes, your Honor.  The evidence would

9    consist of both witness testimony and documentary evidence.

10   The witness testimony includes cooperating witnesses and lay

11   witnesses.  The documentary evidence includes emails, text

12   messages, trading records, and would establish that between

13   2014 and 2016 Mr. Majidi, Mr. Ahuja and Mr. Shor and others

14   conspired and did mismark and inflate the value of securities

15   in PPI's portfolio and misled their investors to defraud them.

16             THE COURT:  Thank you.

17             Mr. Majidi, were you able to hear the prosecutor just

18   now?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand, sir, that if your case

21   were to proceed to trial that is part or all of the

22   government's evidence against you at that trial?

23             THE DEFENDANT:  I do.

24             THE COURT:  Mr. Linder, do you agree there is a

25   sufficient factual predicate for a guilty plea?

IAVTMAJP

1          MR. LINDER:  I do, your Honor.

2          THE COURT:  Is there any reason why I should not

3     accept it?

4          MR. LINDER:  None.

5          THE COURT:  Mr. Naftalis, do you agree that there's a

6     sufficient factual predicate for a guilty plea?

7          MR. NAFTALIS:  Yes, your Honor.

8          THE COURT:  Is there any reason why I should not

9     accept it?

10         MR. NAFTALIS:  No, your Honor.

11         THE COURT:  Mr. Majidi, at this time do you wish to

12    enter a plea of guilty in this case?

13         THE DEFENDANT:  I do.

14         THE COURT:  To Counts One, Two, Three and Four, sir?

15         THE DEFENDANT:  Yes, all four counts.

16         THE COURT:  Thank you.  Mr. Majidi, because you have

17    acknowledged that you are in fact guilty as charged in each of

18    these counts of the indictment, because I am satisfied that you

19    know of your rights, including your right to go to trial, and

20    that you're aware of the consequences of your plea, including

21    the range of penalties that may be imposed, and finally because

22    I am comfortable that you are knowingly and voluntarily

23    pleading guilty, I will accept your guilty plea and I will

24    enter a judgment of guilty on Counts One through Four of this

25    indictment.

IAVTMAJP

1          We talked about sentencing earlier, sir, and at some

2     point in this case we will begin the process of sentencing.

3     The United States Probation Office will want to interview you

4     in connection with the presentence investigation report that it

5     is preparing.  I am going to order that that interview not take

6     place unless one of your attorneys or a representative from

7     their office is present with you.  Do you understand that, sir?

8          THE DEFENDANT:  I do, yes.

9          THE COURT:  And sir, let me say something else to you,

10    that is not legal advice, I just want to make that clear.  Your

11    attorneys give you legal advice, I do not.

12          If and to the extent that you choose to speak with the

13    probation office, I would ask you to ensure that what you say

14    to them is as complete and as accurate as it can be.  And I say

15    that because the presentence investigation report is something

16    that I rely on very heavily when I impose sentence.  That

17    report is most useful to me when it is accurate and when it is

18    complete.  You will have an opportunity to review the report

19    before I ever see it, as will your attorneys, as will the

20    attorneys for the government.  I invite you to review the

21    report before I see it because there may be information in the

22    report that you wish to modify, that you wish to correct, or

23    that you wish to object to, and I want you to have that

24    opportunity.

25          So again, that is not legal advice.  I want you to

IAVTMAJP

1   understand how the presentence investigation report factors

2   into my sentencing decisions.  Do you understand that, sir?

3              THE DEFENDANT:  I do.

4              THE COURT:  At this time, counsel, I'm asking both

5   sides, are we setting a control date?

6              MR. NAFTALIS:  I think that makes sense, your Honor.

7              THE COURT:  How far out would you like to go?  Six

8   months?

9              MR. NAFTALIS:  Six months is fine.

10             THE COURT:  All right.  Ms. Noriega, may we have a

11  date, please?

12             DEPUTY CLERK:  Monday, April 29, at 3:00 p.m.

13             THE COURT:  At the moment, is that a date that works

14  for both sides?

15             MR. NAFTALIS:  Yes, your Honor.

16             THE COURT:  Okay, thank you.

17             MR. LINDER:  Yes, your Honor.

18             THE COURT:  After comparing schedules, I decided I

19  would prefer to have this sentencing date set in August.

20             Ms. Noriega, could I have a date in August, please?

21             DEPUTY CLERK:  Friday, August 2nd, at 3:00 p.m.

22             THE COURT:  Again I'm going to presume that everyone

23  is available for the August 2nd date, and you will let me know

24  as it gets closer if you are not.

25             I will ask the government to send its factual

1    statement to the probation office at the appropriate time, and

2    the defense can arrange for the interview with the probation

3    officer at the appropriate time as we get closer to.  And I

4    will remind the parties in case I don't have occasion to see

5    you again that I would like the opening sentencing submission

6    two weeks in advance of sentencing and the responsive

7    sentencing submission one week in advance of sentencing so that

8    I have enough time to address these issues and think about

9    everything that's in them.

10          Mr. Naftalis, is there anything else that the

11   government wishes me to do today?

12          MR. NAFTALIS:  No, your Honor.

13          THE COURT:  Thank you.  And Mr. Linder, is there

14   anything else you would like me to do today?

15          MR. LINDER:  Your Honor, may we have one minute to

16   confer with Mr. Naftalis?

17          THE COURT:  Of course.  And Mr. Nicholas as well, I

18   presume.

19          MR. LINDER:  Yes, my apologies.

20          (Pause)

21          MR. LINDER:  Your Honor, in light of the colloquy that

22   the Court had with Mr. Majidi about the medications the

23   medical, I would request once the transcript is prepared that

24   we have an opportunity to review it and ask that the Court

25   redact that portion of it from the public record.

IAVTMAJP

1          THE COURT:  That's fine.

2          Let's go off the record.

3          (Discussion held off the record).

4          THE COURT:  I think it is appropriate for the parties

5     to have an opportunity to confer about what portions of the

6     transcript contains sensitive information that is not necessary

7     to be disclosed to the public.  So I'm going to ask the court

8     reporter, please, to send the transcript in the first instance

9     before publishing it on the public record to the parties, and

10    I'm going to ask them very promptly, upon receipt, to propose

11    to me redactions.  And I will review the redactions and give

12    them my considered view on them.

13          You already know my views as to the appropriateness of

14    transparency on the court record, but I accept that Mr. Majidi

15    has given us information that, while important, is perhaps not

16    necessary to be shared with the public.  So I understand your

17    concerns, and I will let the parties take the first crack at

18    providing to me what they think should be redacted.  But I do,

19    again, understand from the parties that this is not to be a

20    sealed transcript, and therefore it will not be.

21          Mr. Linder, does that make sense to you?

22          MR. ROSENBERG:  Absolutely, your Honor.

23          THE COURT:  And that's what we're going to do, and I

24    believe that's clear to all who are present.

25          Mr. Linder, other than that issue, and I appreciate

IAVTMAJP

 1    you raising it, is there anything else that you want to address

 2    with me at this time?

 3              MR. ROSENBERG:  Nothing, your Honor.

 4              Mr. Majidi, there are certain things that I am

 5    obligated to tell you, and I will tell you them now.  At the

 6    time of your arrest there were conditions of pretrial release

 7    on which you were released.  Do you recall that, sir?

 8              THE DEFENDANT:  I do.

 9              THE COURT:  Do you recall perhaps signing a bond and

10    signing other documents across the street?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Those conditions still apply.  So I know

13    you know that, but I am obligated to tell you this, so I am

14    asking you, to the extent that you have committed to certain

15    reporting schedules or things of that nature, they still apply.

16    Do you understand that, sir?

17              THE DEFENDANT:  I do.

18              THE COURT:  Also, at the moment, there is a date set

19    in August for us to see each other again for your sentencing.

20    There is the possibility that I may require you to appear in

21    court prior to that date.  Do you understand, sir, that if I

22    obligate you, if I tell you that you have to be in court, that

23    in fact you have to be in court, and if you are not in court on

24    a date that I order, you could be charged with a separate

25    offense, and that offense is known as bail jumping.  Do you

IAVTMAJP

1   understand that, sir?

2            THE DEFENDANT:  I do.

3            THE COURT:  So may I understand that if I order you to

4   be in court, I will see you?

5            THE DEFENDANT:  You will see me, yes.

6            THE COURT:  That is what I need to know.

7            Anything else that anyone else wants to bring to my

8   attention in this proceeding?

9            MR. NAFTALIS:  No, thank you, your Honor.

10           THE COURT:  Thank you all very much for your patience

11  this afternoon.

12           MR. LINDER:  Thank you, your Honor.

13           (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25